IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JARROD MARTIN, § | | |
| Dall. Cnty. Jail BookIn No. 23044578, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| V. § | No. 3:24-cv-167-X-BN | |
| § | | |
| UNKNOWN OFFICERS, § | | |
| § | | |
| Defendants. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Jarrod Martin, a Dallas County jail inmate, filed in the Eastern District of Texas a *pro se* complaint under 42 U.S.C. § 1983, alleging deliberate indifference and that he has been refused access to the courts. *See* Dkt. No. 1.

After Martin's lawsuit was transferred to this district, *see* Dkt. No. 4, United States District Judge Brantley Starr referred it to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

The Court will grant Martin's motion for leave to proceed *in forma pauperis* [Dkt. No. 2] under the Prison Litigation Reform Act ("PLRA"), which requires that, where a plaintiff is imprisoned or detained pending trial and seeks relief from a governmental entity or employee, a district court must, on initial screening, identify cognizable claims or dismiss the complaint, or any portion of the complaint, that "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.

§ 1915A(b).

Considering the complaint under the PLRA, the undersigned enters these findings of fact, conclusions of law, and recommendation that, to the extent and for the reasons set out below, the Court should dismiss Martin's claims.

## Legal Standards

As set out above, the PLRA authorizes the Court to dismiss a complaint where it "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).

Because this language tracks the language of Federal Rule of Civil Procedure 12(b)(6), the Court should apply the pleading standards as set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Under these standards, Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, just "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557).

On the other hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

But, while a court must accept a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In fact, "the court does not 'presume true a number of categories of statements, including,'" in addition to legal conclusions, "'mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021)).

So, to avoid dismissal for failing to state a claim upon which relief may be granted under Section 1915A(b)(1), plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679)).

**Analysis**

Martin first alleges that an attack resulted in a "finger on [his] left hand almost

being severed" but that Methodist Hospital "put it back together[;] did a great job[;] [his] hand worked fine as it has [his] entire life." Dkt. No. 1.

Subsequent surgery at Parkland Hospital was not as successful. According to Martin,

> Parkland Hospital said they needed to do nerve surgery, and when I woke up after I had the worse pain I ever felt in my life. Parkland illegally cut the tendons of my left wrist when there was no problem with my tendons, and doctors never stated that they were going to do this to me. I was not informed that doctors were going to do this, had I known I would have said no. This happened while I was in state custody.

*Id.*

"In the context of medical care, a prison official violates the Eighth Amendment when he acts with deliberate indifference to a prisoner's serious medical needs." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).

"'Deliberate indifference is an extremely high standard to meet' but can be satisfied by a 'wanton disregard for [an inmate's] serious medical needs.'" *Cope v. Cogdill*, 3 F.4th 198, 207 (5th Cir. 2021) (quoting *Domino*, 239 F.3d at 756).

Put another way, "[d]eliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." *Alvarez v. City of Brownsville*, 904 F.3d 382, 391 (5th Cir. 2018) (en banc) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617-18 (5th Cir. 2009) (quoting, in turn, *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992))); *see also Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021) ("[D]eliberate indifference cannot be inferred merely from a negligent or even a

grossly negligent response to a substantial risk of serious harm. Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." (cleaned up)).

Alone, a disagreement with medical treatment or a failure to provide additional medical treatment does not constitute deliberate indifference. *See Domino*, 239 F.3d at 756; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *see also Smith v. Allen*, 288 F. App'x 938, 939 (5th Cir. 2008) (per curiam) (determination that a prisoner was not a candidate for further surgery after two prior surgeries were not successful "is insufficient to establish a constitutional violation" (citations omitted)).

Under these standards, Martin's allegations concerning his surgery at Parkland do not state a plausible constitutional violation. *See, e.g.*, *Oxford v. Univ. of Tex. Med. Branch*, 774 F. App'x 256, 258 (5th Cir. 2019) (per curiam) ("[D]issatisfaction with the success of [a] surgical procedure is insufficient to show deliberate indifference." (citing *Domino*, 239 F.3d at 756; *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006))); *Baker v. Armstrong*, 813 F. App'x 928, 930 (5th Cir. 2020) (per curiam) ("[D]isagreement with [a] treatment regimen and any unsuccessful treatment are insufficient to establish deliberate indifference." (citing *Gobert*, 463 F.3d at 346)).

Martin separately alleges that he was refused access to the courts where he was "refus[ed] access to the law library, and a tablet which every other inmate has access to, and envelopes, paper and pens" and where he had "to trade food … to access

legal materials." Dkt. No. 1 at 4.

> Pretrial detainees and prisoners have an established constitutional right to access the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, the [United States] Supreme Court's decision in *Bounds* did not establish that prisoners have a right to a law library or legal assistance. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996). Rather, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for assuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* at 351 (quoting *Bounds*, 430 U.S. at 825). Therefore, a prisoner alleging a violation of *Bounds* must demonstrate an actual injury. *Id.* According to the Supreme Court, the right to access the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Because of the actual injury requirement, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.*

*Mendoza v. Strickland*, 414 F. App'x 616, 618 (5th Cir. 2011) (per curiam); *see also Hopkins v. Ogg*, 783 F. App'x 350, 354 (5th Cir. 2019) (per curiam) ("A prisoner's right of access to the courts is limited to 'the ability of an inmate to prepare and transmit a necessary legal document to a court.'" (citing *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996); *Terry v. Hubert*, 609 F.3d 757, 761-62 (5th Cir. 2010) (applying this principle to pretrial detainees))).

If Martin sought access to the law library or legal materials to assist with his defense in a pending criminal proceeding, "the appointment of counsel for [the inmate] in that proceeding satisfies the constitutional requirements," *Story v. Ellis Cnty. Ct. 40th Dist.*, No. 3:19-cv-1994-B-BN, 2019 WL 5580143, at *3 (N.D. Tex. Aug. 30, 2019) (citing *Bounds*, 430 U.S. at 828, 830-31; *Lewis*, 518 U.S. at 351-52), *rec. accepted*, 2019 WL 5579468 (N.D. Tex. Oct. 29, 2019). *Cf. Degrate v. Godwin*, 84 F.3d

768, 769 (5th Cir. 1996) (per curiam) ("Guided by *Bounds*, many federal circuit courts have held that a prisoner who knowingly and voluntarily waives appointed representation by counsel in a criminal proceeding is not entitled to access to a law library." (collecting cases)).

Regardless, the facts in support of Martin's access claim fail to plausibly allege a constitutional violation under the applicable standards where no facts alleged "show that '[Martin's] position as a litigant was prejudiced by his denial of access to the courts.'" *Hopkins*, 783 F. App'x at 354 (quoting *Eason*, 73 F.3d at 1328; citing *Terry*, 609 F.3d at 762); *see id.* ("Hopkins has made no showing of prejudice as he does not explain how he would have proceeded with access to a law library, what claims he would have raised, or how those claims would have been meritorious. Accordingly, Hopkins has not established that the district court erred in dismissing his claim for denial of access to the courts." (citing *Iqbal*, 556 U.S. at 678; *Terry*, 609 F.3d at 762; *Eason*, 73 F.3d at 1328)).

The Court should therefore dismiss Martin's claims.

### Leave to Amend

The time to file objections to this recommendation (further explained below) allows Martin an opportunity to explain how the fatal pleading deficiencies identified above can be cured and thus show the Court that this case should not be dismissed at this time and that the Court should instead grant him leave to further amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, but a movant must

give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)).

If Martin fails to show that leave to amend should be granted, the Court should dismiss this case with prejudice.

## Recommendation

Unless Plaintiff Jarrod Martin satisfactorily shows through timely objections a basis to amend the complaint to allege a plausible claim, the Court should dismiss the complaint with prejudice under 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: February 9, 2024

 

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE